## Case No. 9,156.

### MARTIN v. BANK OF THE UNITED STATES.

[4 Wash. C. C. 253.] [1]

Circuit Court, E. D. Pennsylvania. Oct. Term, 1821.

BANKS—NOTES ISSUED — PART OF NOTE LOST— RIGHT TO BE PAID FULL AMOUNT.

If the owner of a bank note of the bank of the United States cut it into two parts, and send those parts by mail, and one part be lost, and the other arrives safe, he is entitled to recover the whole sum from the bank; and this although the bank had previously given notice that in such cases they would not pay unless both parts were produced.

[Cited in Bank of United States v. Sill, 5 Conn. 110–113; Tower v. Appleton Bank, 85 Mass. 390; Hagerstown Bank v. Adams Express Co., 45 Pa. St. 429.]

Case agreed. On the 11th of December, 1820, the plaintiff owned and possessed sundry promissory notes called bank notes, drawn and signed in due form by and on behalf of the defendants, whereby they promised to pay to different persons, or bearer, on demand, the several sums mentioned in the said notes, which were of the description following: one note, letter A, No. 583, for $100, payable to Benjamin Morgan or bearer; fifteen notes for $20 each, payable in like manner, and of the following letters and numbers, viz. H, 1492, G, 1489, &c., &c.; nine notes for $10 each, payable in like manner, and of the following letters and numbers, viz. I, 1576, &c.; and one note for $10, payable to J. C. Faber or bearer, E, No. 1566: making together the sum of $500. That on the same day, the agent of the plaintiff, then being at Cincinnati in the state of Ohio, divided each of the said notes into two nearly equal parts, and thereupon indorsed the right hand parts of the said notes in a letter which he thereupon sealed, and addressed by indorsement or superscription to the plaintiff

[1] [Originally published from the MSS. of Hon. Bushrod Washington, Associate Justice of the Supreme Court of the United States, under the supervision of Richard Peters, Jr., Esq.]

in Philadelphia, and on the same day placed the same in the post office at Cincinnati aforesaid. That the said letter, nor any one of the said halves of notes has not since come to the plaintiff's hands, but all the said halves of notes have been stolen, lost, or destroyed. That the left hand halves of the said notes were indorsed in another letter, and placed in the same office on the succeeding day, and are now in the possession of the plaintiff. That the plaintiff presented the said halves to the defendants before the institution of this suit, and demanded payment of the same, and at the same time offered to the defendants a good and sufficient bond of indemnity to indemnify them against all claims, payments, costs, or damages which might arise, or which the defendants might be compelled to make or incur in consequence of the said right hand moieties, or any of them. But the defendants refused to accept the said bond of indemnity, or to pay the said notes, or any part thereof. That the notes of the Bank of the United States of the description of those before mentioned, are numbered only on the right hand halves, and lettered on the left hand halves; that the signature of the president is on the right half, and that of the cashier on the left hand half, and there is no known mark, letter, or number, on either half of such a note by which its connexion with the opposite half of the same note is certainly established after the note has been divided. The same letter has numbers from 1 to any number the necessities of the bank require; and the same number is given to four letters, namely, A, B, C, D, but to no more; so that any number may belong to any one of those four letters, but to no more. On the 24th of August, 1819, or as soon as practicable after that date, the defendants published an advertisement, of which a copy is hereto annexed, in all the newspapers in the city of Philadelphia, and in the National Intelligencer at Washington; a copy was sent to each of the offices of discount and deposit of the bank, and published in one or more newspapers in their respective neighbourhoods.

The notice above referred to is as follows: "Notice is hereby given that the Bank of the United States will not, after the 1st day of November 1819, hold itself responsible upon any of its notes which shall be voluntarily cut into parts, except on the production of all the parts."

Mr. Binney, for plaintiff, insisted that, independent of the notice the question involved in this case has been decided, first by this court in the year 1808, in the case of Bullet v. Bank of Pennsylvania [Case No. 2,125], and afterwards in the case of Patton v. State Bank [2 Nott & McC. 464]; also by the circuit court for the District of Columbia, in the case of Armat v. Union Bank of Georgetown [Case No. 535]. He also read 3 Camp. 323,

in which Lord Ellenborough had decided otherwise at nisi prius. Mossop v. Eden, 16 Ves. 430; Chitty, Bills (last English Ed.) 190, 201. He contended that the case was not altered by the notice; that it was not competent to the bank to vary the rules of law and of evidence; and to prescribe the terms upon which she would pay her notes, or under what circumstances she would refuse to do so.

Mr. Sergeant, for the bank, admitted that the practice of cutting bank notes for the purpose of transmitting the parts in letters by different mails, from one place to another, was sanctioned by a usage too inveterate to be now condemned. But he pointed out the expense to which it exposed the bank, and the difficulty which the loss of one of the halves occasioned to this bank in particular in identifying the note, and guarding against fraud and imposition. That, strictly speaking, a man has no legal right voluntarily to mutilate the evidence of a debt, and that it was competent to the bank to rid herself of the effects of a contrary usage, by a public notice that she would not pay any thing unless both parts of the note are produced. He admitted that if a negotiable note, which passes by delivery be destroyed, or if other evidences of debt be lost, the owner may resort to inferior evidence to prove his demand, and that a court of common law will afford him relief. But if a note payable to bearer be lost, and may therefore be yet in existence, and in the hands of a bona fide holder, the owner can be relieved only in equity, where alone an indemnity can be provided. As to the notice, he insisted that the right to cut a bank note, and to demand payment upon the production of one of the halves, are not incidents so inseparably connected with such notes, that the bank might not guard herself against impositions to which the practice exposed her, by the means which the defendants had resorted to.

WASHINGTON, Circuit Justice. I have carefully reviewed the decision of this court in the case of Bullet v. Bank of Pennsylvania [Case No. 2,125], aided by the light shed upon the question involved in that and in the present case by the able arguments of the counsel on each side. My opinion remains unchanged, and is indeed confirmed by the two American cases cited at the bar, and particularly by the luminous argument of Judge Drayton in the case of Patton v. State Bank [supra]. The principles upon which this court decided the case of Bullet v. Bank of Pennsylvania were, that a bank, or any other promissory note, is the evidence of a debt due by the maker to the holder of it, and nothing more. It is also the highest species of evidence of such debt, and in fact the only proper evidence, if it be in the power of the owner of the note to produce it. But if it be lost or destroyed, or by fraud or accident has got into the possession of the maker, the owner does not thereby lose his debt, but the same continues to exist in all its rigour, unaffected by the accident which has deprived the owner of the means of proving it by the note itself. The debt still existing, the law, which always requires of a party that he should produce the best evidence of his right of which the nature of the thing is capable, permits him, where such better evidence is lost or destroyed, or not in his power, to give inferior evidence, by proving the contents of the lost paper; and if this be satisfactorily made out, he is entitled to recover. If the evidence be not lost, but is merely impaired by accident, or even by design, if such design be not to injure the maker or to cancel the debt, the principle of law is the same. Cutting a bank note into two parts does not discharge the bank from the debt, of which the note was but the evidence, nor does it even impair the evidence itself, if, by uniting the parts, the contents of the entire note can be made out. If one of the parts should be lost or destroyed, the debt would be no more affected than if the entire parts had been lost or destroyed. The evidence is impaired indeed, not by the act of cutting the note, but by the same accident which would have affected the entire note, had that been lost. In both cases, the owner must resort to secondary evidence, and is bound to prove that the note did once exist, that it is lost or destroyed, and that he is the true, bona fide owner of the debt. If one part only of the note be lost, the difficulty which the real owner of it has to encounter in proving his right to the debt is diminished. For if the entire note be lost, the owner of it at the time of the accident may not be entitled to the debt of which it was the evidence, at the time he demands payment, because the note, passing from hand to hand by bare delivery, may have been found, and have got into the possession of a bona fide holder. But against the real owner of one half of the note, there cannot possibly be an opposing right. The finder or robber of the other half part cannot assert a right to the debt, because he cannot prove that he came fairly to the possession of the evidence of it. I speak judicially, when I say that he cannot prove that fact, because he cannot do it without the aid of perjury, which the law does not presume, and can in no instance guard against it. If the lost half note gets fairly into the hands of a third person, he takes it with notice that there may be a better title in the possession of the other half, and consequently he looks for indemnity to the person from whom he received the half part, if it should turn out that he was not the real owner of the entire note. It is impossible, therefore, that the bank can be legally called upon to pay the note twice; and if the officers of the

institution suffer themselves to be imposed upon by insufficient or false evidence, by which means the bank is brought into this predicament, she must abide the loss as being occasioned by an error of judgment in the officers of the bank, or their want of due caution. The law cannot adapt its provisions to every possible case that may occur, and it therefore proceeds from necessity upon general principles applicable to all cases.

If upon any other ground than fraud, or perjury, the maker of the lost note may by possibility be twice charged, the law will not expose him to that risk by relieving the asserted owner, of it; not because there may be imposition in the case, or because the debt ought not to be paid; but because the proof that the claimant is the real owner of the debt is defective; for it by no means follows, that, because the lost note did belong to him, that it may not then be the property of some other person. A court of law therefore will, in such a case, dismiss the parties from a forum which has no means of securing the maker of the note against a double charge, and leave him to one where those who ask of it equity will be compelled to do equity. The case then resolves itself very much into a question of jurisdiction. For it is quite clear that the real owner of the debt, the evidence of which is lost, is entitled to supply the want of the better evidence by that which is secondary, and this rule of evidence is the same in equity as at law. But whether the application for relief shall be in the one court, or in the other, must depend upon the particular case, and its fitness for the one jurisdiction or the other.

Many difficulties were stated by the defendants' counsel, to which the practice of cutting the notes and transmitting them by mail, exposes banking institutions in identifying the part of a note when produced for payment. That these difficulties do in a measure exist, must be admitted. But the bank knows that there can be but one owner of the note, and who that one is, must be satisfactorily proved, to entitle him to payment of it. The bank has a just right to call for such proof; and if it be truly and faithfully given, there can be no risk in paying it. The possessor of the other half part of the note, as already observed, by whatever means he acquired it, can never oblige the bank to pay the money over again to him. But after all, the rule of law does not rest upon this circumstance. The maker of the note is bound to pay to the person who proves himself to be the legal owner of it; and the difficulties complained of, are not greater than those which attend most litigated questions.

It may not be improper here to observe, that the decision in the case of Bullet v. Bank of Pennsylvania [supra] did not proceed upon any usage applicable to the case. None such was stated in the case agreed, or alluded to by the court.

The next question is new;—no case like it was cited at the bar, nor is there any within the recollection of the court. It is nevertheless within the range of some general principles of law, by the light of which I think it may be decided. The question is, whether it was competent to the bank to notify the holders of her notes, that in case they should be voluntarily cut into parts, she would not pay them, unless all the parts should be brought together? I mean to treat the question as if the notice were brought home to the plaintiff. It is unnecessary, in this case, to decide how far parties to a contract may, by positive stipulations, change the rules of evidence applicable to that particular contract. If they may do so, it must be upon the basis of an agreement assented to by both parties. But upon what principle is it, that one party to a contract can prescribe terms to absolve himself from its obligations, without the assent of the other? I know of none. If the bank can dictate to the holders of her notes the condition stated in this notice, upon the performance of which, and not otherwise, she would pay them; she might with equal authority prescribe any other condition, and declare in what case she would pay, and in what case she would not. The note is the evidence of an engagement by the bank to pay a certain sum of money to the bearer of it; and the general law of the land declares, that if such note, or a part of it, should be lost, or destroyed, the debt shall nevertheless be paid, upon satisfactory proof being made of the ownership and loss. Thus sanctioned, these notes pass from hand to hand; and if the bank can nevertheless discharge herself from her obligation to pay them, unless both parts of the note be produced, or unless the note be produced entire, (and there is no difference between the two cases,) then the arbitrary declaration of the bank must be stronger than the law. This observation applies with equal force to every other species of contract, where one of the parties to it attempts to prescribe to the other the rules of evidence by which alone he will be governed.

I thought the defendants' counsel seemed unwilling to contend, that the bank could go the length of declaring that they would not pay a lost note, or one which had been torn or defaced by accident. But if the court be correct in their opinion upon the first point, it follows, that the law as much compels the bank to pay the owner of half a note, where the other half is lost, as to pay in the two cases supposed; and if so, the right of the bank to prescribe terms in the one case, if admitted, would be equally valid in the others. There can be no difference, unless it be that in the one the notes were voluntarily cut, and in the other they were torn by accident. But the owner

of the debt, being also the owner of the paper which is the evidence of it, he had a legal right to cut it, and by doing so, he could not impair the obligation, unless he intended to do so. In all these cases, the note is cut with a view to the security, not to the destruction of the debt, by doubling the chances of preserving part of the evidence of it, in case the other part should be lost. The defendants do not forbid, or condemn the practice, even if it could for a moment be admitted that they had a right to do either. That is not the gravamen stated in the notice; it is the production of one of the parts for payment, unaccompanied by the other part. That is the case in which the bank declares she will not pay, and in which the law pronounces she shall pay.

I am of opinion that judgment should be entered for the plaintiff.