ALBANY,
Jan. 1831.

Hinsdale
v.
The Bank of
Orange.

---

HINSDALE and others *vs.* THE BANK OF ORANGE.

The holder of *bank bills* cut in two parts for the purpose of safe transmission per mail, is entitled to recover of the bank the amount of the bills, where it appears that the bills were actually mailed, and that only one set of the halves came safe to hand.
Such recovery may be had under the common *money counts*.

THIS was an action of assumpsit, tried at the Rensselaer circuit in June, 1829, before the Hon. WILLIAM A. DUER, then one of the circuit judges.

The plaintiffs being the holders of bills of the bank of Orange to the amount of $204, cut them into two parts, and put the right hand halves into the post office at *Cincinnati*, in Ohio, on the 30th September, 1821, enclosed in a letter directed to the cashier of the Eagle Bank in *New-Haven*, in Connecticut, which letter, with its enclosures, came safely to hand. Two days afterwards, the left hand halves were put into the post-office in another letter, directed as the first, which were not received by the cashier. In August, 1825, the right hand halves of the bills were presented at the counter of the bank of Orange, and payment demanded of the whole amount of the notes. The cashier of the bank declined to pay more than the one half of the amount of the bills. A witness testified that he, as the agent of the plaintiffs, deposited the letters in the post-office at Cincinnati, and that they contained the halves of the bills as above stated; and

the cashier of the Eagle Bank testified that only the right hand halves came to hand. The defendants objected to a recovery ; because, 1st. The plaintiffs had failed in proving that they were the owners of the bills at the time they were cut ; 2d. That the *loss* of the left halves had not been shewn ; 3d. That the declaration containing only the *common money counts*, the plaintiffs were not entitled to recover under the same ; that if they could recover, it could be only under a special count, setting forth the facts, and that a bond of in-demnity had been tendered ; and, 4th. That a bond of in-demnity should have been tendered before suit brought. These objections were overruled, and the plaintiffs had a verdict for the whole amount of the bills, with the interest thereof, since the demand. The defendants excepted and moved for a new trial.

*Hoffman & Tallman*, for the defendants.

*Huntington & Kirtland*, for the plaintiffs.

*By the Court*, MARCY, J. It has never been held, I believe, that the actual production of a bill or negotiable note is in-dispensably necessary to enable the holder, or him who last held it, to recover on it. If the owner of a bill *loses it*, he cannot recover ; but if he can prove that it is actually *de-stroyed*, he may. The reason of this distinction is very obvi-ous. Although the note is *lost* to the rightful owner, it may yet be in the hands of a *bona fide* holder, or in the hands of one claiming to be such, and the maker may be called on to pay it without having the means of shewing that the holder is not entitled to payment ; but if the note be *destroyed*, such can-not be the case. Let us apply this principle to the present case. What is the effect of severing the bills ? They may not be absolutely annihiliated, nor is their negotiability so ef-fectually destroyed as to prevent its being restored ; for af-ter they have 'been cut into two parts, the parts may be put together again, and thereby the bills become as valid and ne-gotiable as they were before ; but there is no negotiability in a separate half of any one of the bills. The negotiability of these bills was destroyed, and so were the bills themselves, by the severance of them and presenting one half of them

to the defendants, for all the purposes for which a destruction of negotiable paper is required to enable him who had the right to it to recover on it. Lord Ellenborough, 3 *Campb.* 324, though an action could not be maintained by the person who had severed a bill and lost one half of it ; because, if he could recover on the half not lost, the other half might fall into the hands of a *bona fide* holder, who would also be entitled to recover, and the maker ought not to be held liable to two parties at the same time. This opinion must proceed upon the ground that the lost half of the bill was negotiable ; for if it was not, there could not be a *bona fide* holder of it. This appears to me to be a mistaken notion. That half of a bill by itself, and wholly separated from the other half, is not negotiable, is as clear to my mind as the proposition is certain that a part is not equal to the whole. When a bill ceases to exist as a whole, it ceases to have those properties which belong to it as an entirety, one of which is negotiability. If negotiability does not belong to a separate half of a bill or note, there can be no objection to sustaining this action on account of the non-production of the lost halves, that would not exist if those halves had been actually destroyed, because they can give to the finder or holder no more right to sustain an action against the defendants, than he would have by possessing the ashes of them if they were burned. The owner of a lost negotiable note is entitled, *prima facie*, to recover against the maker by making proof of the instrument, and shewing, as he would be enabled to do, that it was executed by the defendant. But such would not be the case with the holder of the lost half bills ; he would be obliged to show what has been required of the plaintiffs in this case ; that his possession of the half bills was rightful, and that he was the owner of the whole bills at the time they were cut into two parts ; or, in other words, that he owned them at the time of their destruction ; for I hold that the cutting them, under the circumstances of this case, amounts to a destruction of them as negotiable paper. I would not be understood to assert that the cutting of the notes is an absolute destruction ; but, in legal effect, it is a destruction where such a disposition of either of the halves is

made as to prevent their being brought together as whole notes, and thus the payment of them claimed of the makers. Such must certainly be the case, where one part of them is surrendered to the makers, as was offered to be done in this instance. As to authorities, I would observe that I consider the decision of the circuit court of the United States for the District of Columbia, 16 *Niles' Register*, 360, entitled to as much respect as the *nisi prius* opinion of Lord Ellenborough. But it is said that the plaintiffs do not shew that they were the owners of the bills when they were severed. On this point the evidence is not very full. It was proved that the agent of the plaintiffs, on the 30th September, enclosed the right hand halves of the bills in question in a letter, which was directed and sent to Mr. Rossiter at New-Haven; and two days after, he, as such agent, enclosed and forwarded, in like manner, the left hand halves, which have not since been heard of. It would seem to me like cavilling, to say that this evidence does not shew that the bills, before they were severed, or both halves, afterwards and at the same time, were in the hands of the plaintiffs; and if so, that fact is sufficient to entitle them to recover as holders. The fact of their being the owners at the time the bills were cut and mailed, was left to the jury, and the evidence warranted their verdict.

It is urged that there should have been a special count to conform to the peculiar circumstances of this case. This, it appears to me, was not necessary. If the plaintiffs had produced the notes on the trial, they would have recovered on the common counts; and so they would, had they shewn an actual destruction of them. The facts proved being considered tantamount to a destruction, were properly received under the common counts.

Judgment for plaintiffs.