Pierrepont, J.
This case comes before us by direction of the Judge below, and presents the following facts:
The steamboat “ Connecticut,” on her voyage from Hew York to Allyn’s Point, pn the 17th of October, 1856, encountered a heavy gale, and for general safety it became necessary to throw a large amount of her cargo overboard. Most of the cargo jettisoned was stowed on ■ the main deck, in accordance with established usage of the trade by steamboats running on the Sound.
The space below the main deck was, as usual, occupied by the engine, boilers, coal, &c., and by passengers.
Upon the deck was a crate of Adams & Co., express agents and forwarders. In the crate was a package of bank notes belonging to the plaintiffs, amounting to $1,170, which they had entrusted to Adams & Co., to transport to Boston for hire.
By agreement between Adams & Co. and the owners of the steamboat, Adams & Co. were allowed to transport on said boat a stated number of portable crates with their contents, and for this privilege they paid the owners of the boat a fixed annual sum, and Adams & Co. collected their own charges for whatever they transported in the crates.
The owners of the boat, claiming that the bank bills saved were liable to contribute in general average towards the loss occasioned by the jettison, retained the bills, to secure the payment of their contributory share of such loss. The' plaintiffs brought this action to recover the bills.
This case presents the important question touching the liability of goods stowed on the deck of a steamer, to contribute in gen *217 eral average for jettisoned cargo. The necessity of the jettison is admitted, and the jettisoned goods were stowed on deck.
Laws were written upon the subject of general average contribution for jettisoned cargo before the Roman Code, and the law of ancient Rhodes was transplanted into the Roman law, and appears duly accredited in the Pandects of Justinian. (Digest, lib. 14, tit. 2, ch. 2.)
The Digest states it thus:
“ Lege Rhodia cavetur, wt si levandce navis gratid, jacius mercium foetus est, omnium, contributions sarciatur, quod pro omnibus datum est."
If goods are thrown overboard in order to lighten a ship, the loss incurred for the sake of all shall be made good by the contributions of all. But ancient as is the law upon this subject, an embarrassment arises out of the distinction made between deck-stowed goods and other cargo; and it must be confessed that the law yet remains in some confusion.
Chancellor Kent says (without qualification): “ Goods shipped on deck contribute, if saved; but if lost by jettison, they are not entitled to the benefit of general average; for they, by their situation, increase the • difficulty of navigation, and are peculiarly exposed to peril.” (3 Kent Com., 240, and cites Smith v. Wright, 1 Caines’ R., 43; Lenox v. United States Ins. Co., 3 Johns. Cas., 178, and other authorities, in support of that doctrine.)
In Abbott on Shipping, we find it stated thus: “ The ^French ordinance in express terms excludes from the benefit of general average, goods stowed upon the deck of the ship, and the same rule prevails in practice in this country.” (Abb. on Ship., 482, citing many authorities.)
Judge Story says: “ Our law is the same. A jettison of goods stowed on deck cannot be brought into general average.” (In note to Abbott in his edition.)
Bell, in his Commentaries upon the Laws of Scotland, says: “ Goods stowed on deck, and thrown overboard, are not to be relieved by contribution.” (Yol. 1, p. 586.)
In Kent’s Commercial and Marine Law, 231, it is said: “ Goods shipped on deck are not entitled to the benefit of general average, if lost.”
*218 The reason assigned for this rule, is, that goods thus stowed tend to embarrass the navigation of the vessel, and to increase the danger. The American authorities are numerous and seem ,to sustain the above rule. (Cram v. Aiken, 13 Maine R, 229; Sproat v. Donnell, 26 Maine R., 185; Barber v Brace, 3 Conn., 9; Dodge v. Bartol, 5 Greenl., 286; Hampton v. Brig Thaddeus, 4 Martin N. S., [Lou.,] 582; Lenox v. United States Ins. Co., 3 Johns. Cas., 179; Smith v. Wright, 1 Caines’ R., 43.)
Mr. Arnould, however, says: “ That goods carried on deck are • not contributed for if jettisoned, unless they are so carried according to the common usage and course of trade on the voyage for which they are -shipped; but that on proof of such usage, they are contributed for like other goods.” (2 Arn. on Ins., 888.)
And in Gould v. Oliver, (4 Bing., N. C., 185,) it was held that goods laden on deck, according to the custom of a particular trade, are entitled to contribution for a loss by jettison.
In the case of Milward v. Hibbert, (3 Queen’s Bench, 120, S. C.; 2 Gale & Davis., 142,) it appears that a quantity of pigs, in the course of a voyage from Waterford to London, were thrown overboard from the deck where they were stowed. It was insisted that for the deck-stowed pigs no contribution could be claimed. The Court held otherwise. Lord Denman, in pronouncing the opinion of the Court, makes the following very pertinent remarks : “ The practice appears to have been, not to lay it down as a rule of law, that for goods stowed on the deck the owner of them shall be' excluded from the benefit of general average, but to receive the evidence'of commercial men respecting the usage of the trade, and the general understanding of those engaged in it, (and. in insuring,) which may obviously vary and require, from time to time, fresh evidence and different explanations.”
These views of Lord Denman will, I think, commend themselves to every man of business knowledge or good sense.
The old rule was established when all vessels were propelled by sails, aiid when there was no machinery in the hold of the ship; but the introduction of steam into marine service, has wrought great changes in the situation of the motive power, and has rendered the steamboat -deck the fitter place for the stowage of cargo. The reason of the rule has ceased, and the rule should perish with the reason. In the common law there is *219 a wise flexibility which yields to the progress of science and to the. changes in the mode of business, and we are prepared to hold that cargo, stowed upon the deck of a steamboat, in accordance with established usage of the trade, must contribute, in general average loss occasioned by jettison, the same as goods stowed elsewhere. (Harley v. Milward, 1 Jones and Cary, 229.)
The plaintiff contends, under his third point, that under the arrangement between Adams & Co. and the owners of the Connecticut, the bank notes in question paid no freight, and did not form any part of the cargo of the vessel, and on that ground are exempted from liability to contribution.
.Adams & Co. paid freight for the crate and its contents, not for the empty crate alone. It would be as reasonable to hold that the goods in boxes paid no freight, but only the boxes. The fact that Adams & Co. paid by the year, can make no difference in the principle of this case.
It was ably pressed upon our consideration at - the argument that, as the whole doctrine of contribution for jettisoned goods rested upon the ground “ that the property sacrificed was the price of safety of that which is made to contribute,” (3 Kent’s Com., Lec. 47, p. 233,) it would be most inequitable to make a light package of bank notes mo^e valuable -than the whole cargo, (and which could have been taken in the hand from the crate,) contribute in proportion to their value; so disproportionate to the risk and to the real price of safety. And Lord K a méis in his Principles of Equity, (116,) contends that the contributions should be according to weight and not value. But it is now well settled that gold coin and diamonds must contribute. A dollar bill occupies more space than four gold dollars, and a diamond, worth $40,000, occupies scarce the space of ten one dollar bills.
“ The general rule is, that all merchandise, of whatever kind, or to whomsoever belonging, contributes according to its value, however small the size or weight in comparison to the value. (3 Kent’s Com., 240; Abb. on Shipping, 502, and the numerous authorities cited.)
But this case presents another question of some embarrassment, and about which the books are in direct conflict; and that is, whether bank notes which are not money, but only the evidences of debt are liable to contribute for general average loss. Mr. *220 Philips thinks they are not liable. (2 Phil. on Insurance, 155, §§ 1397, 1295.) Weslcett (an old writer)) thinks they are. (Wesk., tit. Cont.¡ 1.) Arnould makes no positive statement; he says, Weskett’s “ seems to be the better opinion,” but cites no authority.
The industry of the counsel who argued this cause with so much care on either side, did not furnish us with a single decision upon this point, nor have I been able to find one.
By the Rhodian law it was deemed just that all should contribute to whom the jettison had been of advantage, and the amount was apportioned according to the value of the goods. It extended to the apparel of every person, even to the ring upon the finger, though the ring and clothes paid no freight. By the English law personal jewels and wearing apparel do not contribute. (Abb. on Shipping, 503.) (roods, wares, money, jewels and all other property transported as merchandise contribute in proportion to their value. (3 Kent’s Com., 240.)
Bank notes are not money,- they will.not satisfy an execution, they are not a legal tender. Recovery may be had against an individual upon his promissory note lost or destroyed and so also against a bank where the.bank note is destroyed; hence it is argued, that the bank bill being only the representative of property or evidence of debt, is not bound to contribute.
In Handy v. Dobbin, (12 J. R., 220,) the opinion of the Court was delivered by Judge Speuceb, holding expressly that bank bills were goods, and subject to levy on execution. (Turner v. Fendall, 1 Cranch., 117.)
This action is instituted to recover the possession of personal property, and the plaintiff swears that the package of bills are his goods. .
The thief who steals bank bills, finds that the law treats him as though he had stolen goods. If one converts the bank bills of another to his own use, an action will lie'as for the conversion of personal property. If one burns or throws into the sea the bank bills belonging tcf another, an action lies, and the amount of damage is the face of the bills if the bank be solvent. In the absence of all proof to the contrary, the law will presume that the bank notes are worth their nominal value.
We therefore conclude that jettisoned goods, carried on deck, stowed in the usual way, and according to the custom of the *221 trade of a steamer navigating the Sound, are-entitled to contribution for general average loss.
That bank bills, so carried in a crate by an express company, for hire, are to be treated as other goods, and are bound to contribute when saved.
And that, in the absence of proof to the contrary, the value of the bills is the amount expressed upon their face, and contribution must be made proportionate to that value. And hence, that in this case, judgment should be entered for the defendants, with costs.
Hoffman, J.
The case is an interesting and a new one. We are indebted to the counsel on both sides for the care with which • it has been brought before us.
Gan bank bills be made to contribute in general average under any circumstances? Can those of the plaintiffs be made to contribute in this particular case ? Such are the questions to be solved. I shall consider, in the first place, the facts in this particular action, and the points raised upon them.
1st. The contract which was made between the plaintiffs, and the Adams’ Express Company in Baltimore, constituted the latter the agents of the plaintiffs, and made -the mode of transportation pursued, by that Company precisely the same, as to all obligations and rights, as if prescribed or sanctioned by themselves. Especially is this the case, when these agents pursued, in this instance, their ordinary method and means of transportation. The case of the N. J. Steam Nav. Co. v. The Merchants' Bank, (6 How. U. S. R., 344,) settles this point.
The cargo-which was jettisoned was on-deck; but was there according to the established custom of steamboats between New York and Allyn’s Point. It is true that, by the general maritime law, goods stowed upon the deck are not the subjects of general average when jettisoned. (Abb. on Shipping, 481, 8 ed., and Mr. Shee’s note; Emer., p. 492; Dodge v. Bartol, 5 Greenl., 286; Lenox v. United Ins. Co., 3 Johns. Cas., 178.)
But when the goods are transported coastwise in a steamboat; when the usage is uniform to carry all, or the bulk of the cargo on deck, the space under being apprppriated to the machinery and other purposes; and when that usage is so general that con *222 structive notice of its prevalence may be inferred in ail, deck goods thrown over' are as much to be contributed for as goods in any other situation. The present case sufficiently falls within this rule.
I have examined with care the following authorities: The ordinance of Louis XIV, and the 421st and 229th articles of the Code of Commerce of France'; the exception to the general rule arising from a usage on a coasting voyage, stated by Valin, and the comments of Boulay Paty & Rocron upon it. (Valin, tom. 2, art. 12, p. 189; Boulay Paty, tom. 4, pp. 567-569; Rocron, tit. Avarie, art. 421; Gould v. Oliver, 4 Bing. N. C., 134; 2 Scott C. B., 241; 2 Man. & Gr., 208; Milward v. Hibbert, 3 Queen’s Bench R., 120; 2 Gale & Dav., 142; Harley v. Milward, 1 Jones & Cary, 224; Dodge v. Bartol, 5 Greenl., 286; and Hampton v. Brig Thaddeus, 4 Martin’s Lou. R., 582.) I think the rule I have stated is warranted by them. Such as appear to be hostile may be distinguished on satisfactory grounds.
The reasoning of Boulay Paty, upon the two sections of the Code of Commerce, (421 and 229,) appears to me conclusive; and, I observe, in the Journal de Palais, (sup., vol. 1, p. 152, Astor Library,) that a case was decided in the Court of Cassation in 1845, holding that goods carried coastwise on deck were to be contributed for. '
2d. The counsel of the defendants next insists that, under the arrangement between Adams & Co. and the owners of the steamboat, the bills in question paid no freight, and did not form any part of the cargo, and on that ground are exempt from liability.
But the fixed annual sum which Adams & Co. paid for the transportation of their crates was in the nature of freight, and the charge for transportation, paid by the plaintiffs, contributed' to the payment of that amount. In substance, these bills paid freight.
3d. The next and general question, whether bank bills are liable to contribute in general average, is,the material inquiry.
In the first place, we have the great principle of general average, that whatever is saved ought to bear a portion of the loss, of what has perished to procure the safety.
*223 Although the Rhodian law, which was the basis of the Maritime Code of Rome, and is eulogized by Cicero for its wisdom, must be deemed to be lost in its integrity; yet there can "be no doubt that the compilation which bears its name is of great antiquity. The very writers who have- displaced its high claims, quote it as of an ancient date. (Emer. Pref., 32, and quotations passim; see Chief Justice Dube’s Lect. on Ins., vol. 1, pp. 24-46.)
By the rule of that Code, everything on board a vessel, even the baggage of passengers, their apparel, and ornaments, though worn upon their persons, was liable to contribute. The writers of the general civil law adopt this doctrine. They are quoted by Emerigon. (Chap. 12, § 42, Mer. ed., 492; Vinnius, p. 211.)
The Guidon de la Mer made everything liable, even what the passengers carried about them. (Chap. 5, art. 26.) Their persons were exempted. Duarenus, quoted by Emerigon, declares that it is the general rule that all which has been preserved and is susceptible of being valued, is to contribute to the jettison. In short, the rule of the civil law proper was, that nothing was exempt but provisions intended for consumption, and the persons of free passengers. The pride of the Roman dictated the latter exception, as the person of a. freeman was incapable of estimation.
Pothier treats the Code of Commerce, in exempting nothing expressly but the clothes of the crew, as leaving all else liable. (Tit. des Avaries, No. 125.) Boulay Paty would distinguish between clothes and jewelry on the person, and those in a trunk or elsewhere. (Tom. 4, p. 562.)
But it cannot be asserted that the civil law rule is now our law. “It is not every object of value which is liable for a contribution of average, but only such things as are termed Merces. Merces has never been held to extend to provisions, but includes only the cargo put on board for the purpose of commerce, and the practice shows that this has been the ■ understanding of all .times. Magens, Molloy, Beames, Stevens and other writers all expound the word Merces in this way. They concur in saying, that things of little weight, but of considerable value, must contribute, if they belong to the cargo, but not if they belong to the passengers.” “ The rule is, that all merchandise put on board for the purpose of traffic, is liable to be brought into contribu *224 tion; and in merchandise is included all property of great value, unless attached to the persons of the passengers, but property so attached does not contribute.”
These are the positions of Best, Oh. J., and Park, J., in Brown v. Stapyleton. (4 Bing., 119.)
And in Peters v. Milligan, (cited in Park on Ins., 211,) it was held that gold, silver, jewels and precious stones contribute. (Abb. on Ship., 502; 2 Arn. on Ins., 919.)
Weskett on Insurance, (Tit. Contrib., Ho. 1,) says, that bank bills ought to contribute a part to make up a loss from jettison.
Mr. Phillips (vol. 2, p. 149, art. 1897,) refers to this authority, and observes: “ But as these are not so properly actual property as the evidence of demands, which evidence may be'supplied by other, in case of their being lost, if sufficient precautions are taken by-the holder to prove what notes they were; this circumstance distinguishes them from specie or other property, which is usually made to contribute.”
This is all the authority I have found directly to the point.
There is another general rule which may be invoked to assist us. Magens states, that what does not pay freight, does not pay average. (Yol. 1, p. 62.) This may be sometimes unjust, and probably is not an unexceptionable rule. Goods of the master, not paying freight, ought. to contribute. (Stevens, part 1, eh. 1, p. 52.)'
But the converse of the rule may perhaps be unexceptionable. "What does pay freight ought to contribute.
But the main argument- of the plaintiffs’ counsel remains. Hothing was saved in "saving the bills. Ho damage would have occurred to the plaintiffs had they been lost. They were not property, the destruction of which was irretrievable. They were evidences of debt, which debt could be established by other proof. It is substantially the view presented by Mr. Phillips.
But is this so? Was it nothing to save these bills from going to the bottom? According to the rule of the Supreme Court of * our State, as stated by Justice Marct, if a bank bill be lost to the owner, he cannot recover, but if destroyed, he may. (6 Wend., 378.) Yet that recovery depends upon his ability to prove destruction, ownership and identity. It is inevitable that some damage, delay and difficulty must in all cases arise to him. *225 Proof must be given. From this he is saved by the preservation of the bills. The bank might be justified in demanding either delay, to ascertain whether efforts to recover the property would not be available, or indemnity. Nothing but an equity suit would, perhaps, then avail. (See Will. Eq. Jur., 52, 54.)
We have, in this case, bills of a bank carried as part of the cargo, paying what is in truth freight for the transportation, and exposed in the crate to as much risk of loss as any part of the cargo—certainly as much as any costly articles, such as laces, contained in the crate—I cannot but think contribution ought to be made. It is not necessary to say, and it does not inevitably result, that because the bills should contribute they would be the objects of contribution if sacrificed.
. The general rule undoubtedly is, that contribution and to be contributed for, are convertible obligations and rights; but this rule is not without exceptions. The clothes of sailors are exempt, and yet are to be paid for if cast overboard. Munitions of war and provisions appear to be governed by the same rule. (Emer., ch. 12, § 42; Mered. ed., 493, 494.) Perhaps there may exist a distinction in the case of bank bills. At any rate, upon a question so very new, I think it should be left for a decision when necessary.
The defendants are entitled to judgment.
Moncrief, J., concurred in ordering judgment for the defendants.
Judgment accordingly.