## MIDDLESEX COUNTY.

### Thomas T. Tower *vs.* The President, Directors and Company of the Appleton Bank.

The owner of bank bills, which cannot be identified or distinguished from other similar bills, cannot maintain an action against the bank which issued them, upon circumstantial evidence that they have been destroyed, and a tender of a bond of indemnity.

CONTRACT against a banking corporation, to recover the amount of sundry bank bills issued by it, and alleged to have been destroyed by fire.

At the trial in the superior court, there was evidence tending to show that the plaintiff left the bills in question in his trunk, in his room in a house in Chicago, which was burnt within an hour afterwards, and that no person entered the room after he left it, and that the trunk and its contents were burnt with the house. There was no other evidence of the destruction of the bills. Upon this and other evidence which is not necessary to be stated here, *Putnam,* J. instructed the jury that if the plaintiff was the owner of the bills, and they were destroyed by fire, and the plaintiff notified the defendants and demanded the amount thereof, and tendered a bond of indemnity, he was entitled to recover; and the jury returned a verdict for the plaintiff. The defendants alleged exceptions.

*D. S. Richardson & G. F. Richardson,* for the defendants.

*T. Wentworth & T. Pearson,* for the plaintiff.

HOAR, J. The reasons upon which it has been held that the owner of a negotiable promissory note, which is lost or destroyed, may maintain an action upon it against the maker although it may have been indorsed in blank, and therefore made transferable by delivery, were stated in the case of *Fales* v. *Russell,* 16 Pick. 315. The general doctrine is, that where a writing is evidence of a contract, the loss or destruction of the

writing does not destroy the cause of action, and that secondary evidence of the contract is admissible. The objection to the application of this doctrine to the case of a negotiable bill or note, payable to bearer, or payable to order and indorsed in blank, is given in *Hansard* v. *Robinson*, 7 B. & C. 90. Lord Tenterden there says : " The general rule of the English law does not allow a suit by the assignee of a chose in action The custom of merchants, considered as part of the law, furnishes, in this case, an exception to the general rule. What, then, is the custom in this respect? It is, that the holder of the bill shall present the instrument, at its maturity, to the acceptor, demand payment of its amount, and upon receipt of the money deliver up the bill. The acceptor, paying the bill, has a right to the possession of the instrument for his own security, and as his voucher and discharge *pro tanto* in his account with the drawer. If, upon an offer of payment, the holder should refuse to deliver up the bill, can it be doubted that the acceptor might retract his offer or retain his money? " This was the case of an indorsee against the acceptor of a lost bill of exchange ; and the judgment of the court was, that the plaintiff's only remedy was in equity, where the court could provide for an adequate indemnity to the defendant, as a condition of payment. And such has been the rule in England, in the case of lost notes, until it was modified by statute. The statute of 9 & 10 W. 3, *c.* 17, § 3, provided in the case of inland bills expressed to be for value received, and payable after date, " that in case any such inland bill or bills of exchange shall happen to be lost or miscarried within the time before limited for payment of the same, then the drawer of the said bill or bills is and shall be obliged to give another bill of the same tenor with those first given ; the person or persons to whom they are and shall be so delivered giving security, if demanded, to the said drawer, to indemnify him," &c. The statute of 17 & 18 Vict. *c.* 125, § 87, contains the more extensive provision, that " in case of any action founded upon a bill of exchange or other negotiable instrument, it shall be lawful for the court or a judge to order that the loss of such instrument shall not be set up, provided an

indemnity is given to the satisfaction of the court or judge, or a master, against the claims of any other person upon such negotiable instrument."

But without any statute provision, the case of *Fales* v. *Russell* is an authority to show that in this commonwealth the plaintiff, in the case of a note lost or destroyed, will not be required to resort to a court of chancery for a remedy ; but that a court of law, while it fully recognizes the right of the defendant to the security which the production and giving up of the negotiable instrument declared on would afford, has authority to prescribe an equivalent security, by a sufficient and reasonable indemnity. *Almy* v. *Reed,* 10 Cush. 421. It has been held otherwise in New York. *Rowley* v. *Ball,* 3 Cow. 303.

Whether the same rule is applicable to bank notes, intended to circulate, and actually circulated as currency, is the question presented by the case at bar; and we believe it has never been decided in this commonwealth. Although a bank note is the promissory note of a corporation, it differs in some important respects from other promissory notes. It is intended not merely as the evidence of a single contract, to become worthless when that contract is performed, but to be issued repeatedly, and to pass from hand to hand with the utmost freedom. They are commonly made upon paper of a peculiar quality, embellished and distinguished by vignettes and other ornamental engraving ; and are of some value to the bank which issues them. In *The People* v. *Wiley,* 3 Hill, (N. Y.) 194, it was held that bank notes prepared for issue, but still in the possession of the bank, were the subject of larceny. It was said by Mr. Justice Wilde, in *Hinsdale* v. *Larned,* 16 Mass. 68, that " there can be no great doubt that the statute of limitations is not applicable to demands on bank notes, where the action is brought against the corporation ; because the circulation of such notes is daily renewed ; and because lapse of time is no presumption of payment, these notes never being paid, unless given up by the holder at the time of payment." This was so fixed by statute afterward. Rev. Sts. *c.* 120, § 4. Whether payment can be enforced without a previous demand at the bank, if no place of payment

33 *

be stipulated in the note, is a question which we believe has never been determined in this commonwealth. In Maine it has been decided that they do not differ in this respect from other promissory notes payable on demand, and that the commencement of the action is a sufficient demand. *Bryant* v. *Damariscotta Bank*, 18 Maine, 240. The same opinion was given in the supreme court of New York by Woodworth, J., in *Bank of Niagara* v. *M'Cracken*, 18 Johns. 493 ; but in *Jefferson County Bank* v. *Chapman*, 19 Johns. 322, the same judge observed tha this was only his individual opinion, and was not decided by the court. In *Haxtun* v. *Bishop*, 3 Wend. 21, Chief Justice Savage expressed the same opinion; but the point was not essential to the decision of the case.

Some implication that the legislature regard the right of a bank to the possession of its bills, as a condition of paying them, to be different from that of the maker of an ordinary promissory note, may perhaps be found in the provision in *St.* 1859, *c.* 116, § 1, "that banks may replevy their bills upon payment or tender of the amount due upon them." Gen. Sts. *c.* 57, § 65. And a similar inference might be drawn from the provision that banks shall be subject to a penalty for not paying bills presented at their banking-house in business hours; as if this were regarded as the breach of the contract with the bill holders. Gen. Sts. *c.* 57, § 59.

The case of *Hinsdale* v. *Bank of Orange*, 6 Wend. 378, was an action to recover upon bank notes which had been cut in two, for the purpose of transmission through the mail, and one half of them lost. The plaintiff was allowed to recover, on the ground that by severing the notes their negotiability was destroyed. But Mr. Justice Marcy took a distinction between the loss and the destruction of a note, and said : " If the owner of a bill loses it, he cannot recover ; but if he can prove that it is actually destroyed, he may."

In *Bullet* v. *Bank of Pennsylvania*, 2 Wash. C. C. 172, a similar decision was given by Mr. Justice Washington ; and again, upon a very full discussion, in *Martin* v. *Bank of U. States*, 4 Wash. C. C. 253. In each of the two latter cases, no distinction

is made between a bank note and any other promissory note payable to bearer; but the general principle is asserted, first, that the note is only the evidence of the contract, the loss or destruction of which may be supplied by secondary evidence; and secondly, that, if upon any other ground than fraud or perjury the maker might be subject to be twice charged, the plaintiff should not be allowed to recover, except upon furnishing an adequate indemnity — which could only be provided by a court of equity.

But aside from any specific distinction applicable to all bank bills issued as currency, there is a difficulty in the plaintiff's case as presented upon the facts reported. The evidence of the destruction of the bills is merely circumstantial, and not positive. Upon the doctrine of *Fales* v. *Russell*, the plaintiff, by his own negligence or misfortune, is unable to do what it was the right of the defendants to require, for their own security, namely, to give up the bills when paid. If the bills were shown to be actually destroyed, beyond all question or controversy, the case might be different; as, for instance, if the destruction were admitted by the pleadings. But upon the mere preponderance of proof, which is sufficient to authorize a jury to find a fact in issue, we think it is not to be assumed conclusively that the bills are destroyed, without further provision for the defendants' security against their reappearance. . If, then, it is sought to provide this security by a bond of indemnity, how can such a bond be given? There is nothing to distinguish or identify the bills which the plaintiff says have been destroyed. Against a second payment of what bills are the defendants to be indemnified? How could they show that any bills already redeemed, or hereafter to be redeemed, were or were not the bills in question? Clearly there could be no mode of determining the fact, until their whole circulation of bills of the same denomination should be called in. But suppose that several parties should sue upon bills alleged to have been destroyed, and should recover, each giving a bond of indemnity. If it should afterward appear that all the bills had not been destroyed, upon which bond would the defendants have a remedy?

The answer given to this objection by the plaintiff's counsel is, that the defendants issue bills in such form as they choose, and that the plaintiff should not be prejudiced because they are issued in such a form as not to be distinguished from each other. But this is not a satisfactory answer. The defendants have not contracted to redeem their bills, except upon their production and delivery; and it is the negligence or misfortune of the plaintiff that they cannot be produced. The plaintiff is then bound to furnish an equivalent; to put the defendants in as good a condition as if the bills were produced. If he cannot do this, he has no right to shift the consequences of the loss upon a party in no wise answerable for it. It is deserving of consideration, also, that the defendants do not stand upon any equality with the plaintiff in the trial of the question whether the bills are really destroyed. The plaintiff is a competent witness for himself; and the production by the defendants of any number of bills exactly like those said to be destroyed would be no defence, unless the whole issue of such bills were accounted for.

Upon the whole matter, the court are of opinion that to permit a plaintiff to recover upon such proof as this case presents, upon bills circulating as currency, and available to any one taking them *bona fide*, without such means of distinguishing the particular bills as would admit of an adequate indemnity, would open a wide door to fraud, would be incompatible with the reasonable security and rights of the defendants, and is not required by law.                    *Exceptions sustained.*